UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 17-cv-21897

DESIREE GOODE,

      Plaintiff,

vs.

CARNIVAL CORPORATION,
a Panamanian Corporation, d/b/a
CARNIVAL CRUISE LINE;
MARGARITAVILLE HOLDINGS, LLC,
MARGARITAVILLE HOLDINGS II, LLC,
MARGARITAVILLE CARIBBEAN
LIMITED, AND MARGARITAVILLE
(TURKS) LTD.,

      Defendant.

_____/

## FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY

      Plaintiff, DESIREE GOODE("Plaintiff"), through undersigned counsel, sues Defendants, CARNIVAL CORPORATION (hereinafter "CARNIVAL"), a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE; MARGARITAVILLE HOLDINGS, LLC, MARGARITAVILLE HOLDINGS II, LLC, MARGARITAVILLE CARIBBEAN LIMITED, AND MARGARITAVILLE (TURKS) LTD., (hereinafter "MARGARITAVILLE DEFENDANTS"), and demands trial by jury, stating as follows:

### PARTIES AND JURISDICTION

      1.    Plaintiff seeks damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

      2.    This Court has Diversity Jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. Alternatively, in the event this matter does not come under the diversity jurisdiction of the Court,

then this matter is being brought under the admiralty and maritime jurisdiction of the Court pursuant to 28 U.S.C.§ 1333 as the causes of action asserted are maritime torts.

3.    Suit is filed in Federal Court because of the federal forum selection clause in the Passenger Contract Ticket issued by the Defendant, CARNIVAL.

4.    Plaintiff is *sui juris* and is a resident and citizen of Belcamp, MD.

5.    Defendant, CARNIVAL, is a foreign corporation incorporated in Panama who is authorized to conduct and who does conduct business in the State of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County Florida.

6.    Defendant, CARNIVAL, is a citizen of the State of Florida.

7.    Defendant, MARGARITAVILLE HOLDINGS, LLC, is a domestic corporation with its principal place of business in Palm Beach, Florida.

8.    Defendant, MARGARITAVILLE HOLDINGS II, LLC, is a domestic corporation with its principal place of business in Orlando, Florida.

9.    Defendant, MARGARITAVILLE CARIBBEAN LIMITED, is a foreign entity with an office in Miami-Dade County.

10.    Defendant, MARGARITAVILLE (TURKS) LTD., is a foreign entity and a wholly owned subsidiary of MARGARITAVILLE CARIBBEAN LIMITED.

11.    Upon information and belief, MARGARITAVILLE (TURKS) LTD., is a wholly owned subsidiary of MARGARITAVILLE CARIBBEAN LIMITED.

12.    Further, upon information and belief both MARGARITAVILLE (TURKS) LTD. and MARGARITAVILLE CARIBBEAN LIMITED are wholly owned subsidiaries of MARGARITAVILLE HOLDINGS, LLC, and MARGARITAVILLE HOLDINGS II, LLC.

13.    Defendant, CARNIVAL, at all times material hereto, personally or through an agent, in the County and in the District in which this Complaint is filed:

a.    Operated, conducted, engaged in or carried on a business venture in this state

and/or county; and/or

    b.       Had an office or agency in this state and/or county; and/or

    c.       Engaged in substantial activity within this state; and/or

    d.       Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

    14.   At all times material hereto, MARGARITAVILLE DEFENDANTS, personally or through an agent:

    a.    Operated, conducted, engaged in, or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b.    Owned, used, and/or possessed real property within the state;

    c.    Contracted to insure a person or risk located within this state at the time of contracting;

    d.    Were engaged in substantial and not isolated activity within this state;

    e.    Purposefully availed themselves of the benefits of conducting activities within Florida by purposefully directing their activities in and toward the state, thus obtaining the benefits and protections of the state's laws;

    f.    Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

    g.    The acts of Defendants set out in the Complaint occurred in whole or in part in this country and/or state;

    15.   Defendants are subject to the jurisdiction of the courts of this state.

    16.   The claims asserted by Plaintiff against MARGARITAVILLE DEFENDANTS are so related to the claims asserted in this action against CARNIVAL (which is within the original jurisdiction of this Honorable Court) that they form part of the same case or controversy under Article III of the United States Constitution, and Supplemental Jurisdiction is proper under 28 U.S.C.A. § 1367.

    17.  MARGARITAVILLE DEFENDANTS have engaged in substantial and not

isolated activity within this state under the general jurisdiction section of Florida's Long-Arm Statute, Florida Statutes, Section 48.193(2), including, but not limited to: 1) maintaining at least one office in Florida at 8795 Northwest 100th Street, Medley, Florida 33178, 2) reaching out to cruise lines in Florida and establishing long term business partnerships with them, 3) contracting with cruise lines in Florida to provide shore excursions to cruise line passengers, 4) entering into partnerships and/or joint ventures with cruise lines in Florida to provide shore excursions to cruise line passengers, 5) agreeing to insure and/or indemnify cruise lines in Florida, and 6) deriving substantial revenues from business with cruise lines in Florida. In the aggregate, MARGARITAVILLE DEFENDANTS' collective, continuous, and systematic business activities in Florida establish general jurisdiction.

18.    MARGARITAVILLE DEFENDANTS are and have been in the business of providing excursions to Florida cruise line passengers, such as Plaintiff, throughout the Caribbean and Turks and Caicos. A significant amount of MARGARITAVILLE DEFENDANTS' business comes from Florida-based cruise lines and their passengers, including Plaintiff.

19.    Each year, hundreds of thousands of U.S. passengers travel to the Turks and Caicos Islands aboard the ships of Florida-based cruise lines, including CARNIVAL. MARGARITAVILLE DEFENDANTS attract these passengers, such as Plaintiff, to their shore excursion by reaching out to Florida-based cruise lines, including CARNIVAL, establishing business partnerships with them, and entering into contracts with them. In fact, MARGARITAVILLE DEFENDANTS are part of a business partnership with Miami-based Norwegian Cruise Line which involves a "Margaretaville Restaurant" and "5 O'clock Somewhere Bar" aboard NORWEGIAN ESCPAE, sailing from Miami.

20.    In addition to CARNIVAL (based in Miami), the following cruise lines call at Turks and Caicos: Crystal Cruises (based in California), Oceania Cruises (based in Miami), Princess Cruises (based in California with a port operations office in Ft. Lauderdale), Regent Seven Seas Cruises (based in Miami), Silversea Cruises (based in Ft. Lauderdale)

and Holland America (based in Seattle but a subsidiary of CARNIVAL).

21.    MARGARITAVILLE DEFENDANTS' shore excursion in the Turks and Caicos Islands is sold by cruise lines, including CARNIVAL, to U.S. passengers, such as Plaintiff, originating and returning to ports in Florida.

22.    MARGARITAVILLE DEFENDANTS receive the benefits of the advertising efforts of Florida-based cruise lines, including CARNIVAL. For example, when passengers, such as Plaintiff, board CARNIVAL Cruise Ships, CARNIVAL offers, recommends, and markets MARGARITAVILLE DEFENDANTS' shore excursion in Turks and Caicos in various places around the ship. For instance, CARNIVAL allowed passengers to book and pay for MARGARITAVILLE DEFENDANTS' shore excursion in their cabin through the cabin's TV/ There, CARNIVAL passengers, such as Plaintiff, could review the menu of MARGARITAVILLE DEFENDANTS' shore excursion, read about the excursion, see photographs/video of the excursion, and purchase the excursion. Alternatively, CARNIVAL allowed passengers, such as Plaintiff, to book and pay for MARGARITAVILLE DEFENDANTS' shore excursion at the ship's excursion desk and exploration desk. There, passengers could talk to a CARNIVAL crewmember, trained by CARNIVAL to answers questions and provide information about MARGARITAVILLE DEFENDANTS' shore excursion and to assist passengers in purchasing the excursion.

23.    As such, one of the clear benefits to an excursion operator like MARGARITAVILLE DEFENDANTS is that when it enters into agreements with Florida-based cruise lines, like CARNIVAL, it receives the benefits of the cruise line's advertising efforts in Florida directed toward their actual and potential customers in Florida.

24.    In order to maintain existing cruise line business and new cruise line business, MARGARITAVILLE DEFENDANTS submit annual bids for contracts to every Florida cruise line, including CARNIVAL, they want to continue doing business with. The bids are submitted to cruise line excursion departments. Through these bids, MARGARITAVILLE DEFENDANTS offer to Florida cruise lines their shore excursions, including the tourist

resort/restaurant facility shore excursion in the Turks and Caicos. In the bids, MARGARITAVILLE DEFENDANTS provide the Florida cruise lines information regarding each excursion including: tour operator information, tour pricing, timing, accessibility, safety policies, licenses, permits and prior accidents and injuries that have occurred on its tours.

    25.   MARGARITAVILLE DEFENDANTS must submit these bids and with tour forms created by the Florida-based-cruise lines each year to cruise line offices in Florida, in order to renew existing agreements and/or obtain new business from the cruise line. Once MARGARITAVILLE DEFENDANTS submit these bids, the Florida cruise lines process the forms and determine (at their offices in Florida), whether or not to renew and/or expand its existing contract with MARGARITAVILLE DEFENDANTS. By submitting bids and tour proposal templates to Florida-based cruise lines every year, Tour Operator purposefully reached out to cruise lines in Florida to maintain (and increase) their revenues.

    26.   Once MARGARITAVILLE DEFENDANTS' bid is approved by a Florida-based cruise line, including CARNIVAL, a contract is entered into which governs the parties' dealings, including CARNIVAL's advertising, marketing, and sale of shore excursions and MARGARITAVILLE DEFENDANTS' operations and performance of the shore excursion.

    27.   The contracts between the Florida-based cruise lines, including CARNIVAL, and the shore excursion operators, including MARGARITAVILLE DEFENDANTS, contractually agree to application of Florida law and to personal jurisdiction in Florida. Through these contracts, the shore excursion operators, including MARGARITAVILLE DEFENDANTS, agree to the exclusive jurisdiction of courts in Florida for all disputes and matters whatsoever arising from or related to passage contract between the cruise line (CARNIVAL) and a passenger (Plaintiff). Thus, by agreeing to the jurisdiction of courts in Florida, MARGARITAVILLE DEFENDANTS have purposefully availed themselves, and intended to submit themselves to the jurisdiction of this Court.

28.     Upon information and belief, MARGARITAVILLE DEFENDANTS are believed to have entered into a contract with CARNIVAL for the protection of CARNIVAL's passengers, including Plaintiff, whereby MARGARITAVILLE DEFENDANTS agreed to subject themselves to the laws and jurisdiction of the State of Florida, consented to personal jurisdiction in the State of Florida, and consented to venue before the U.S. District Court for the Southern District of Florida. MARGARITAVILLE DEFENDANTS are also believed to have agreed to indemnify CARNIVAL for the claims made in the Complaint within the meaning of Florida Statutes, Sections 48.193.

29.     In addition, as part of their contractual obligations with Florida-based cruise lines, including CARNIVAL, shore excursion operators, including MARGARITAVILLE DEFENDANTS, must procure and maintain insurance coverage for claims such as that involving Plaintiff herein. The geographical coverage of these insurance policies includes Florida. Moreover, as part of the contractual obligations, the Florida-based cruise lines, including CARNIVAL, must be named as additional assureds in the insurance polices procured and maintained by the shore excursion operators, including MARGARITAVILLE DEFENDANTS.

30.     U.S. cruise line passengers, including Plaintiff, who purchase cruises and shore excursions from Florida-based cruise lines, including CARNIVAL, and embark and disembark cruises are intended third party beneficiaries under these insurance policies.

31.     Typically, once a passenger, including Plaintiff, books MARGARITAVILLE DEFENDANTS' shore excursion from CARNIVAL, pays for the excursion in full, and participates in the excursion, MARGARITAVILLE DEFENDANTS transmit an invoice to CARNIVAL's accounts payable department in Miami, Florida. Once processed and approved, the funds are remitted to MARGARITAVILLE DEFENDANTS. This process is repeated after every shore excursion is completed (on each given cruise). Each month, MARGARITAVILLE DEFENDANTS send invoices and receives wire transfers processed by CARNIVAL and the other cruise lines in Florida.

32.    All in all, MARGARITAVILLE DEFENDANTS' activities evince "a general course of business activity in the State [of Florida] for pecuniary benefit." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2006). This is the type of continuous and systematic general business contact with Florida that satisfies the requirements of the "general jurisdiction" section of the Florida Long-Arm Statute, Section 48.193(2).

33.    MARGARITAVILLE DEFENDANTS' activities in Florida satisfy Subsection (a) of the "Specific Jurisdiction" Section of Florida's Long-Arm Statute. At all times material, MARGARITAVILLE DEFENDANTS reached out to Florida-based cruise lines, including CARNIVAL, for the purpose of operating, conducting, engaging in, or carrying on a business or business venture in this state. Fla. Stat. §48.193(1)(a).

34.    At all times material, MARGARITAVILLE DEFENDANTS occupied and used premises at 8795 Northwest 100th Street, Medley, Florida 33178.

35.    At all times material, MARGARITAVILLE DEFENDANTS, as part of its contracts with Florida-based cruise lines, including CARNIVAL, contractually agreed to indemnify Florida-based cruise lines, including CARNIVAL, for any harm resulting to cruise passengers. Accordingly, under Fla. Stat. §48.193, MARGARITAVILLE DEFENDANTS insured persons in Florida.

36.    All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

37.    **DATE OF INCIDENT:** This incident occurred on or about May 26, 2016.

38.    **TIME OF INCIDENT:** On or around 12:00pm.

39.    **LOCATION OF INCIDENT:** The incident occurred while Plaintiff was off shore at a restaurant, while Plaintiff was a lawfully paying passenger aboard Defendant's cruise ship vessel, the Carnival *Conquest*.

40.    **DESCRIPTION OF THE INCIDENT:** At all time material hereto, Defendant

CARNIVAL owned, operated, managed, maintained and/or controlled the medical equipment in the ship's medical facility aboard the vessel Carnival Conquest.

41. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

42. At all times material hereto, CARNIVAL owned, operated, managed, maintained and/or controlled the Carnival Conquest.

43. At all times material hereto, CARNIVAL had exclusive custody and control of Carnival Conquest.

44. On or about May 26, 2016, Plaintiff was a paying passenger aboard the Carnival Conquest which was in navigable waters.

45. At all times material hereto, MARGARITAVILLE DEFENDANTS owned, operated, managed, maintained, franchised, and/or controlled a tourist resort/restaurant facility in the Turks and Caicos Islands.

46. At all times material hereto, MARGARITAVILLE DEFENDANTS had exclusive custody and control of the tourist resort/restaurant facility in the Turks and Caicos Islands.

47. On or about May 26, 2016, by virtue of a shore excursion ticket advertised, marketed, promoted, and sold by CARNIVAL aboard the Carnival Conquest, Plaintiff was a business invitee at MARGARITAVILLE DEFENDANTS' tourist resort/restaurant facility in Turks and Caicos.

48. At all times material hereto, shore excursions from the Carnival Conquest were advertised to passengers, including Plaintiff on CARNIVAL's website, in CARNIVAL's promotional materials (including brochures which contain CARNIVAL's logo), and aboard CARNIVAL's ships.

49. At all times material hereto, CARNIVAL offered passengers, including Plaintiff, aboard Carnival Conquest, the opportunity to go on various shore excursions during the subject cruise, including, but not limited to, MARGARITAVILLE DEFENDANTS' tourist resort/restaurant facility excursion in the Turks and Caicos.

50.    At all times material hereto, CARNIVAL had a shore excursion desk aboard the Carnival Conquest for the purpose of providing CARNIVAL passengers, including Plaintiff, recommendations regarding shore excursions and charging CARNIVAL passengers, including Plaintiff, for these shore excursions.

51.    At all times material hereto, CARNIVAL sold tickets for MARGARITAVILLE DEFENDANTS' tourist resort/restaurant facility shore excursion in the Turks and Caicos to passengers, including Plaintiff, aboard the Carnival Conquest during the subject cruise.

52.    At all times material hereto, CARNIVAL did not provide any information to Plaintiff with respect to the name, address, owner and/or operator of the shore excursion.

53.    While aboard the Carnival Conquest, CARNIVAL recommended to passengers, including Plaintiff, the purchase of MARGARITAVILLE DEFENDANTS' tourist resort/restaurant facility shore excursion in Turks and Caicos.

54.    On or about May 26, 2016, as part of Plaintiff's cruise aboard the Carnival Conquest, Plaintiff participated in MARGARITAVILLE DEFENDANTS' tourist resort/restaurant facility shore excursion in Turks and Caicos. This excursion was arranged for, sponsored, recommended, operated, marketed, and/or sold by CARNIVAL as part of the subject cruise.

55.    At all times material hereto, MARGARITAVILLE DEFENDANTS were the agent(s) and/or apparent agent(s) of CARNIVAL such that CARNIVAL is estopped from denying that CARNIVAL was the principal for MARGARITAVILLE DEFENDANTS, by virtue of the following:

    a.    CARNIVAL made all arrangements for the subject shore excursion without disclosing to Plaintiff that the subject shore excursion was being operated by another entity (and/or entities); and/or

    b.    CARNIVAL marketed the subject shore excursion using its company logo on its website, and/or in its brochures, and/or on its ship without disclosing to Plaintiff that the subject shore excursion was being run by another entity (and/or entities); and/or

    c.    CARNIVAL maintained a shore excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject shore excursion without disclosing to Plaintiff that the subject shore excursion was

being run by another entity (and/or entities); and/or

d.    CARNIVAL recommended its passengers, including Plaintiff, to not purchase or participate in excursions, tours and/or activities that are not sold through CARNIVAL; and/or

e.    Until the point that Plaintiff actually participated in the subject shore excursion, the Plaintiff's exclusive contact concerning the subject shore excursion was with CARNIVAL; and/or

f.    The cost of the subject shore excursion was determined by CARNIVAL; and/or

g.    Payment for the subject shore excursion was charged to Plaintiff, and collected from Plaintiff, exclusively by CARNIVAL; and/or

h.    Plaintiff received a receipt exclusively from CARNIVAL for the purchase of the subject shore excursion.

56.    At all times material hereto, Plaintiff relied on the above, to her detriment, so as to believe that MARGARITAVILLE DEFENDANTS were the agent(s) and/or employee(s) of CARNIVAL, in choosing the subject shore excursion. At no time did CARNIVAL represent to Plaintiff in particular, or the ship's passengers in general, in a meaningful way that MARGARITAVILLE DEFENDANTS were not the agent(s) and/or employee(s) of CARNIVAL.

57.    At all times material hereto, CARNIVAL was the owner or co-owner of the subject shore excursion. At all times material hereto, CARNIVAL was responsible for, and liable for, the actions of MARGARITAVILLE DEFENDANTS with respect to the subject shore excursion.

58.    In the alternative, at all times material hereto, a partnership and/or joint venture existed between MARGARITAVILLE DEFENDANTS and CARNIVAL by virtue of the following, whereby CARNIVAL and MARGARITAVILLE DEFENDANTS were jointly and severally responsible for the negligence of each other as partners of the partnership and/or joint venture:

a.    CARNIVAL and MARGARITAVILLE DEFENDANTS entered into an agreement whereby CARNIVAL made all arrangement for Plaintiff, on behalf of the partnership with MARGARITAVILLE DEFENDANTS for the subject shore excursion operated by MARGARITAVILLE DEFENDANTS; and/or

b.    CARNIVAL marketed on CARNIVAL's website, and/or in its brochures, and/or on its ship, on behalf of the partnership with MARGARITAVILLE DEFENDANTS the subject shore excursion operated by MARGARITAVILLE DEFENDANTS;

and/or

c.  Carnival maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers, on behalf of the partnership with MARGARITAVILLE DEFENDANTS about the subject shore excursion being run by MARGARITAVILLE DEFENDANTS; and/or

d.  CARNIVAL determined the cost for the subject shore excursion operated by MARGARITAVILLE DEFENDANTS; and/or

e.  CARNIVAL collected the payment charged for the subject shore excursion operated by MARGARITAVILLE DEFENDANTS; and/or

f.  CARNIVAL paid MARGARITAVILLE DEFENDANTS a portion of the sales of the tickets for the subject shore excursion after the subject shore excursion tickets were sold; and/or

g.  CARNIVAL shared profits and losses with MARGARITAVILLE DEFENDANTS for the subject shore excursion.

59.  At all times material hereto, CARNIVAL was an agent for MARGARITAVILLE DEFENDANTS in Florida and the United States.

60.  At all times material hereto, CARNIVAL was a partner in the subject shore excursion.

61.  At all times material hereto, CARNIVAL operated and/or supervised the subject shore excursion.

62.  At all times material hereto, MARGARITAVILLE DEFENDANTS owned and operated the subject shore excursion. MARGARITAVILLE DEFENDANTS were involved in providing the subject shore excursion to Plaintiff. At all times material hereto, MARGARITAVILLE DEFENDANTS were the agent(s), apparent agent(s), joint venture(s), servant(s), and/or employee(s) of CARNIVAL and at all times acted within the course and scope of their employment, agency, apparent agency, joint venture or service.

63.  When promoting, recommending, and selling the excursion, CARNIVAL never disclosed to its passengers, including Plaintiff, the physical challenge required and the dangers to be encountered during the excursion.

64.  At all times material hereto, CARNIVAL did not provide any restrictions or warnings to its passengers, including Plaintiff, regarding health or safety concerns for passengers

considering the subject shore excursion.

65.     At all times material hereto, Plaintiff relied on CARNIVAL's representations concerning the level of activity of the subject shore excursion and that there were no notable restrictions or warnings regarding health or safety concerns for passengers purchasing and participating in the subject shore excursion.

66.     In fact, despite CARNIVAL's representations of safety to the Plaintiff, at all times material, CARNIVAL was on notice of the hazardous conditions on the excursion.

67.     On the day in question, Plaintiff was in the pool at MARGARITAVILLE DEFENDANTS' tourist resort/restaurant facility in Turks and Caicos.

68.     Notably, neither CARNIVAL nor MARGARITAVILLE DEFENDANTS provided adequate warnings about the hazards attendant to the subject shore excursion.

69.     Upon information and belief, CARNIVAL and MARGARITAVILLE DEFENDANTS were on notice of prior incidents during the subject shore excursion where passengers have injured themselves.

70.     At all material times, the hazardous conditions were hidden and concealed, thereby affording Plaintiff no warning of the existence of the hazard.

71.     On the day in question, Plaintiff was in the pool as described above. At all times the Plaintiff abided by all applicable rules. However, while she was in the pool, a waiter brought her food on a plate. She took the plate and it busted in her hand, and a piece of the plate fell on her foot, causing her to bleed profusely and suffer severe injuries.

72.     At all times relevant, the plate, the pool, and the area surrounding the pool (together collectively referred to as the "area"), were unreasonably dangerous, risk-creating, defective, outdated, improperly designed, improperly installed, and/or otherwise unsafe.

73.     The plate and the area s lacked adequate safety features to prevent Plaintiff's incident.

74.     These hazardous conditions were known, or should have been known, to Defendants in the exercise of reasonable care.

75.    These hazardous conditions existed for a period of time before the incident.

76.    These conditions were neither open nor obvious to Plaintiff.

77.    Nevertheless, at all times relevant, Defendants failed to adequately inspect the area of Plaintiff's incident for dangers.

78.    At all times relevant, Defendants failed to adequately inspect the plate and the area to ensure that it was reasonably safe, and in a reasonably safe condition.

79.    At all times relevant, Defendant failed to eliminate the hazard(s).

80.    At all times relevant, Defendants failed to properly maintain the plate and the area.

81.    At all times relevant, Defendants participated in the design and/or approved the design of the plate and the area involved in Plaintiff's incident.

82.    At all times relevant, Defendants participated in the installation and/or approved the installation of the plate and the area involved in Plaintiff's incident.

83.    At all times relevant, Defendants failed to properly train and supervise their crew, waiters, employees, agents, and other such individuals.

84.    Furthermore, the lighting was inadequate to enable Plaintiff to notice any hazards.

85.    At all times material hereto, Dr. Thulani Prince Khwela was the ship's doctor working in the vessel's medical facility, with the intent of providing medical care to passengers, including Plaintiff. Martha Kotze was the ship nurse working in the vessel's medical facility, with the intent of providing medical care to passengers, including Plaintiff.

86.    At all times material hereto, Thulani Prince Khwela, the ship's doctor, was an agent and/or employee and/or servant and/or apparent agent and/or joint venturer and/or partner of Defendant CARNIVAL, and at all times acted within the course and scope of their employment, agency, apparent agency, joint venture, or service.

87.    At all times material hereto, Martha Kotze, the ship's nurse, was an agent and/or employee and/or servant and/or apparent agent and/or joint venturer and/or partner of Defendant CARNIVAL, and at all times acted within the course and scope of their employment, agency, apparent agency, joint venture, or service.

88. On the date and time of the incident, Plaintiff was a lawful passenger aboard the Carnival Conquest.

89. At all times material hereto, Defendant CARNIVAL owned, operated, managed, maintained and/or controlled the medical equipment in the ship's medical facility aboard its ship, the *Carnival Conquest*.

90. On the third day of a five-day cruise, Plaintiff disembarked the cruise to tour and/or visit an offshore location and/or participated in a shore excursion, to wit, MARGARITAVILLE DEFENDANTS' restaurant (the "restaurant").

91. While at the restaurant "offshore", Plaintiff was brought a hot plate of food.

92. When the waiter handed the plate to Plaintiff, the glass plate shattered.

93. The pieces of glass from the plate shattered and fell to the ground.

94. Due to the shattered plate, a piece of the glass fell onto Plaintiff foot.

95. The glass cut the top/upper portion of Plaintiff's foot.

96. Plaintiff was bleeding severely.

97. Plaintiff was taking back the subject ship for medical treatment.

98. Plaintiff was seen by the ship doctors.

99. The ship doctors conducted a physical examination of Plaintiff's wound.

100. No x-rays were done of Plaintiff's injury.

101. The ship doctor sutured the wound.

102. Three stitches were sutured.

103. The ship doctor advised the Plaintiff to have the stitches removed in 7-10 days.

104. A gauze was applied and Plaintiff was to leave the dressing on for 48 hours.

105. The next day Plaintiff returned to the medical unit due to the perfuse bleeding of the wound.

106. Plaintiff was advised to refrain from wearing tight shoes, until the stitches were removed in 7-10 days.

107. After Plaintiff returned home, she waited five additional days (per ship doctors'

instructions) to have the stitches removed.

108. Plaintiff was advised that that the three stitches sutured was insufficient. In fact, there should have been more stitches sutured.

109. Plaintiff treating doctor would not remove the stitches and sent Plaintiff to see an orthopedic.

110. Plaintiff was immediately seen by an orthopedic, who stated the glass had cut through Plaintiff's tendon.

111. The tendon was ruptured.

112. Surgery was immediately scheduled.

113. Due to the length of time that had passed, the tendon was unable to be repaired.

114. A tendon transfer was required.

115. The delay in treatment, based on the ship doctor's instruction, coupled with the failure to administer the proper amount of stitches, caused the Plaintiff severe injuries or aggravation of her injury including but not limited to a tendon transfer, loss of feeling/sensation and difficulties ambulating.

## <u>COUNT I</u>
## <u>NEGLIGENCE AGAINST CARNIVAL CORPORATION FOR THE ACTS OF DR. THULANI PRINCE KHWELA; BASED ON THE THEROY OF RESPONDEAT SUPERIOR</u>

116. Plaintiff hereby adopts and realleges each and every allegation in paragraphs 1 through 115 as if set forth herein.

117. At all times material hereto, Dr. Thulani Prince Khwela, ship's doctor, was an agent and/or servant and/or employee of Defendant CARNIVAL. And at all times, the ship's doctor was subject to control and/or the right to control by Carnival.

118. At all times material hereto, Dr. Thulani Prince Khwela, the ship's doctor, was acting within the scope of his employment and/or agency.

119. Defendant Carnival is estopped to deny that Dr. Thulani Prince Khwela was its

agent and/or employee and/or servant.

120. At all times material hereto, Dr. Thulani Prince Khwela, the ship's doctor, owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

121. On or about May 26, 2016, Dr. Thulani Prince Khwela, breached his duty to provide reasonable care under the circumstances by:

  a. Failing to promptly provide Plaintiff with proper and/or adequate medical care and attention; and/or

  b. Failing to timely diagnose and/or to render adequate care/assistance in relation to the diagnosis of Plaintiff's medical condition; and/or

  c. Knowingly rendering treatment to Plaintiff while lacking the proper licenses to practice medicine; and/or

  d. Failing to have proper licenses to practice medicine; and/or

  e. Failure to place the adequate number of sutures to Plaintiff's wound; and/or

  f. Failure to provide the proper instruction regarding removal of sutures.

122. On or about May 26, 2016, Defendant CARNIVAL had a duty to provide the Plaintiff with reasonable care under the circumstances and through the acts of its agent and/or employees and/or servant, Dr. Thulani Prince Khwela, breached its duty to provide Plaintiff with reasonable care under the circumstances.

123. It was the duty of Dr. Thulani Prince Khwela, an agent and/or employee and/or servant of Defendant CARNIVAL, to provide Plaintiff with reasonable care under the circumstances and/or medical care which did not fall below the applicable standard of care for cruise ship doctors.

124. As a result of Dr. Thulani Prince Khwela, the ship's doctor, for which Defendant Carnival is vicariously liable, the Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of

life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

**WHEREFORE**, Plaintiff, Desiree Goode, demands judgment for all damages recoverable under the law against the Defendants and for any and all other relief which the Court deems just or appropriate.

## COUNT II
## APPARENT AGENCY AGAINST CARNIVAL CORPORATION FOR ACTS OF THULANI PRINCE KHWELA (SHIP'S DOCTOR)

125. Plaintiff hereby adopts and realleges each and every allegation in paragraphs 1 through 115 as if set forth herein.

126. At all material times, Dr. Thulani Prince Khwela, was the ship's doctor aboard the vessel Carnival Conquest on or about May 26, 2016.

127. At all times material hereto, Dr. Thulani Prince Khwela was represented to the Plaintiff and the ship's passengers as an employee and/or agent and/or servant of Defendant, Carnival, in that:

  a. He wore a ship's uniform; and/or

  b. He was under the commands of the ship's officers; and/or

  c. He worked in the ship's medical department; and/or

  d. He was paid a salary by Carnival; and/or

  e. He worked aboard the vessel; and/or

  f. He spoke to the Plaintiff as though he had authority to do so by Carnival.

128. At no time did Dr. Thulani Prince Khwela represent to the Plaintiff in particular or the ship's passengers in a general and meaningful way that the Dr. Thulani Prince Khwela was not an agent or employee of Carnival.

129. At all material times, Plaintiff reasonably relied on the representations to her detriment that Dr. Thulani Prince Khwela was an employee and/or agent and/or servant of Defendant, Carnival.

130. It was reasonable to believe that Dr. Thulani Prince Khwela was Carnival's agent because he wore a ship's uniform. In addition, at all times material, Dr. Thulani Prince Khwela spoke and acted as though he was authorized to do so by Carnival.

131. This reasonable reliance was detrimental because it significantly delayed Plaintiff from receiving proper medical treatment.

132. Defendant Carnival is estopped to deny that Dr. Thulani Prince Khwela was its apparent agent and/or apparent employee and/or apparent servant.

133. On or about May 26, 2016, Defendant CARNIVAL had a duty to provide the Plaintiff with reasonable care under the circumstances and through the acts of its apparent agent, Dr. Thulani Prince Khwela, breached its duty to provide Plaintiff with reasonable care under the circumstances.

134. Plaintiff injuries were accelerated due to the fault and/or negligence of Defendant Carnival through the acts of its apparent agent, Dr. Thulani Prince Khwela, as follows:

a. Failing to promptly provide Plaintiff with proper and/or adequate medical care and attention; and/or

b. Failing to timely diagnose and/or to render adequate care/assistance in relation to the diagnosis of Plaintiff's medical condition; and/or

c. Knowingly rendering treatment to Plaintiff while lacking the proper licenses to practice medicine; and/or

d. Failing to have proper licenses to practice medicine; and/or

e. Failure to place the adequate number of sutures to Plaintiff's wound; and/or

f. Failure to provide the proper instruction regarding removal of

sutures.

135.  As a result of the negligence of Dr. Thulani Prince Khwela, ship doctor, for which Defendant Carnival is vicariously liable based on a theory of apparent agency and/or agency by estoppel, the Plaintiff was injured about her body and extremities, resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. The losses are either permanent or continuing.

**WHEREFORE**, Plaintiff, DESIREE GOODE, demands judgment for all damages recoverable under the law against the Defendants and demands trial by jury.

## COUNT III
## APPARENT AGENCY AGAINST CARNIVAL CORPORATION FOR ACTS OF MARTHA KOTZE (SHIP NURSE)

136.  Plaintiff hereby adopts and realleges each and every allegation in paragraphs 1 through 115 as if set forth herein.

137.  At all material times, Martha Kotze, was the ship's nurse aboard the vessel Carnival Conquest on or about May 26, 2016.

138.  At all times material hereto, Martha Kotze was represented to the Plaintiff and the ship's passengers as an employee and/or agent and/or servant of Defendant, Carnival, in that:

        a.  The nurse wore a ship's uniform; and/or

        b.  The nurse ate with the ship's crew; and/or

        c.  The nurse was under the commands of the ship's officers; and/or

        d.  The nurse worked in the ship's medical department; and/or

        e.  The nurse was paid a salary by Carnival; and/or

        f.  The nurse worked aboard the vessel; and/or

g. The nurse spoke to the Plaintiff as though he had authority to do so by Carnival.

139. At no time did Martha Kotze represent to the Plaintiff in particular or the ship's passengers in a general and meaningful way that the Martha Kotze was not an agent or employee of Carnival.

140. At all material times, Plaintiff reasonably relied on the representations to her detriment that Martha Kotze was an employee and/or agent and/or servant of Defendant, Carnival.

141. It was reasonable to believe that Martha Kotze was Carnival's agent because she wore a ship's uniform. In addition, at all times material, Martha Kotze spoke and acted as though she was authorized to do so by Carnival.

142. This reasonable reliance was detrimental because it significantly delayed Plaintiff from receiving proper medical treatment.

143. Defendant Carnival is estopped to deny that Martha Kotze was its apparent agent and/or apparent employee and/or apparent servant.

144. On or about May 26, 2016, Defendant CARNIVAL had a duty to provide the Plaintiff with reasonable care under the circumstances and through the acts of its apparent agent, Martha Kotze, breached its duty to provide Plaintiff with reasonable care under the circumstances.

145. Plaintiff injuries were accelerated due to the fault and/or negligence of Defendant Carnival through the acts of its apparent agent, Martha Kotze, as follows:

a. Failing to promptly provide Plaintiff with proper and/or adequate medical care and attention; and/or

b. Failing to timely diagnose and/or to render adequate care/assistance in relation to the diagnosis of Plaintiff's medical condition; and/or

c. Knowingly rendering treatment to Plaintiff while lacking the

proper licenses to practice nursing; and/or

    d.  Failing to have proper licenses to practice nursing; and/or

    e.  Failure to place the adequate number of sutures to Plaintiff's wound; and/or

    f.  Failure to provide the proper instruction regarding removal of sutures.

146.  As a result of the negligence of Martha Kotze, ship nurse, for which Defendant Carnival is vicariously liable based on a theory of apparent agency and/or agency by estoppel, the Plaintiff was injured about her body and extremities, resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. The losses are either permanent or continuing.

**WHEREFORE**, Plaintiff, DESIREE GOODE, demands judgment for all damages recoverable under the law against the Defendants and demands trial by jury.

## COUNT IV

## JOINT VENTURE BETWEEN DEFENDANTS CARNIVAL, THULANI PRINCE KHWELA, AND MARTHA KOTZE

147.  Plaintiff hereby adopts and realleges each and every allegation in paragraphs 1 through 115 as if set forth herein.

148.  At all times material hereto the Dr. Thulani Prince Khwela was the ship's physician aboard the vessel Carnival Conquest on or about May 26, 2016

149.  At all material times, Martha Kotze, was the ship's nurse aboard the vessel Carnival Conquest on or about May 26, 2016.

150.  A Joint Venture is an association of persons or legal entities to carry out a single business enterprise for profit. At all material times, Defendant Carnival and Defendants Thulani

Prince Khwela and Martha Kotze engaged in a Joint Venture to operate the ship's medical facility for passengers onboard Carnval's ship, Carnival Conquest, for a profit.

151. As its part of the Joint Venture, Defendant Carnival financed and equipped the ship's medical facility and assisted in running it. As its part of the Joint Venture, Defendants Thulani Prince Khwela and Martha Kotze, provided labor and/or assisted in running the ship's medical facility so as to generate charges to passengers which were thereby collected by Carnival and the money was then shared by Carnival and Defendants Thulani Prince Khwela and Martha Kotze.

152. Both Carnival and Defendants Thulani Prince Khwela and Martha Kotze had joint or shared control over aspects of the Joint Venture. Defendants Thulani Prince Khwela and Martha Kotze had control over the day to day workings of the ship's medical facility. Carnival also had control over the day to day workings of the ship's medical facility and had control over the billings and collections for the ship's medical facility. Thus, Carnival and the Defendants Thulani Prince Khwela and Martha Kotze had joint control over the day to day operations of the medical facility in that the Defendants Thulani Prince Khwela and Martha Kotze, performed the medical aspects of the Joint Venture and Carnival performed the operational aspects of the Joint Venture.

153. Carnival and Defendants Thulani Prince Khwela and Martha Kotze shared a common purpose: to operate the ship's medical facility for profit.

154. Carnival and Defendants Thulani Prince Khwela and Martha Kotze had a joint proprietary or ownership interest in the ship's medical facility. Carnival had the interest in the money it devoted to setting up the medical facility and Defendants Thulani Prince Khwela and Martha Kotze had a proprietary interest in the time and labor expended in operating the ship's medical facility. Further, Carnival and the Defendants Thulani Prince Khwela and Martha Kotze shared in the profits of the Joint Venture. Upon information and belief, there exists contractual arrangements with Defendants Thulani Prince Khwela and Martha Kotze which expressly lay out such a profit sharing relationship. In Florida, a duty to share losses actually and impliedly exists as a matter of law in a situation where one party supplies the labor, experience and skill, and the

other the necessary capital.

155. Carnival and Dr. Thulani Prince Khwela and Martha Kotze therefore:

    a.  Had a community of interest in the performance of the common purpose; eg., the operation of the ship's medical facility for passengers for profit; and/or

    b.  Had a joint proprietary interest; and/or

    c.  Had a joint control or right of control with respect to the operation of the medical facility; and/or

    d.  Had a right to share in the profits of the joint venture; and/or

    e.  Would share losses which may have been sustained.

156. As Joint Venturers, Carnival and Defendants Thulani Prince Khwela and Martha Kotze are liable for each other's negligence. As a result, Carnival is liable for the negligent conduct of Thulani Prince Khwela and Martha Kotze and damages previously described in this complaint. Participants in a Joint Venture are each liable for the torts of the other or of the servants of the joint undertaking committed within the course and scope of the undertaking, without regard to which of the joint venturers actually employed the servant.

157. Plaintiff's injuries were exacerbated due to the fault and/or negligence of Defendant Carnival through the acts of its Joint Venturers as follows:

    a.  Failing to promptly provide Plaintiff with proper and/or adequate medical care and attention; and/or

    b.  Failing to timely diagnose and/or to render adequate care/assistance in relation to the diagnosis of Plaintiff's medical condition; and/or

    c.  Knowingly rendering treatment to Plaintiff while lacking the proper licenses to practice medicine and/or nursing; and/or

    d.  Failing to have proper licenses to practice medicine and/or nursing; and/or

e. Failure to place the adequate number of sutures to Plaintiff's

wound; and/or

f. Failure to provide the proper instruction regarding removal of

sutures.

158. As a result of the negligence of Defendants Thulani Prince Khwela and Martha

Kotze, for which Defendant Carnival is liable as a Joint Venturer, the Plaintiff was injured about

her body and extremities, resulting in pain and suffering, disability, disfigurement, mental

anguish, loss of capacity for the enjoyment of life, physical disability, impairment,

inconvenience in the normal pursuits and pleasures of life, expense of hospitalization, medical

and nursing care and treatment, loss of earnings, and loss of ability to earn money. The

injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses

and impairments in the future. The losses are either permanent or continuing.

**WHEREFORE**, Plaintiff,  DESIREE GOODE, demands judgment for all damages

recoverable under the law against the Defendants and demands trial by jury.

## COUNT V
## VICARIOUS LIABILITY
## FOR THE NEGLIGENCE OF THE SHIP'S MEDICAL STAFF

159. Plaintiff hereby adopts and realleges each and every allegation in paragraphs 1

through 115 as if set forth herein.

160. The Defendant owed a duty to exercise reasonable care under the circumstances

for the safety of its passengers.

161. Such duties include, but are not limited to, providing such medical care and

assistance as would an ordinarily prudent person under the circumstances.

162. At all times material, the ship's medical staff (including its doctors and nurses),

and the ship's crew, were full time employees and agents of Defendant, subject to its direction

and control, who were engaged in the activity of discharging Defendant's obligation to make

such medical aid and assistance available to its passengers as would an ordinarily prudent person under the circumstances.

163.   Defendant directly paid the ship's medical personnel and regular crew a salary (i.e., payment by time) for their work in the ship's hospital and in treating passengers.

164.   Defendant directly provided, and operated, the medical center to be used by the ship's medical personnel as well as all of the medical machinery, equipment, drugs and supplies to be used therein, regularly stocking and restocking same.

165.   Defendant collected all medical revenues directly from passengers and generated a profit on the sale of medical services, supplies, and equipment made by the ship's medical personnel to the passengers of the vessel.

166.   The ship's medical personnel were members of the ship's crew; they were subject to the ship's discipline; they were required to wear the ship's uniforms; they (and, in particular, the ship's doctors) were members of the ship's officer's compliment, and at all times they were subject to termination or other discipline by Defendant.

167.   Defendant provided the ship's medical personnel certain forms of liability insurance and/or indemnification rights.

168.   Defendant breached its duties, and was negligent by failing to adequately examine, diagnose, and/ or treat Plaintiff's injuries.

169.   Furthermore, Defendant breached its duties, and was negligent because the doctors and/or other crew members that were responsible for treating Plaintiff lacked adequate experience in treating injuries such as the one Plaintiff suffered.

170.   Defendant also breached its duties, and was negligent by failing to adequately supply its medical center to be able to adequately examine, diagnose, and treat Plaintiff's injuries.

171.   Moreover, Defendant breached its duties, and was negligent by failing to timely

airlift, medivac, and/or disembark Plaintiff, and/or by otherwise failing to take proper measures to ensure that Plaintiff was able to obtain the medical treatment she needed in a reasonable amount of time.

172. Additionally, at all times material hereto, Defendant was careless, negligent, and breached its duties through the following actions and/or inactions, in addition to the other actions and/or inactions described in the factual allegations common to all counts:

    a. Failing to promptly provide Plaintiff with proper and/or adequate medical care and attention; and/or

    b. Failing to timely diagnose and/or to render adequate care/assistance in relation to the diagnosis of Plaintiff's medical condition; and/or

    c. Knowingly rendering treatment to Plaintiff while lacking the proper licenses to practice medicine and/or nursing; and/or

    d. Failing to have proper licenses to practice medicine and/or nursing; and/or

    e. Failure to place the adequate number of sutures to Plaintiff's wound; and/or

    f. Failure to provide the proper instruction regarding removal of sutures.

173. At all times material hereto, the aforementioned acts or omissions on the part of the Defendant fell below the standard of care.

174. Defendant's negligence proximately caused Plaintiff great bodily harm in that, but for Defendant's negligence, Plaintiff's injuries would not have occurred and/or said injuries would have been substantially lessened.

175. Defendant, through its employees and agents, to wit, the ship's medical staff, knew or should have known that the medical procedures they employed violated reasonable standards of medical care.

176.   Defendant's negligence proximately caused Plaintiff great bodily harm in that, but for the Defendant's negligence, Plaintiff's injuries would not have occurred.

177.   As a direct and proximate result, Plaintiff was injured about Plaintiff's body and extremities, and/or her injuries were exacerbated, and Plaintiff suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions there from, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, and her working ability has been impaired. The injuries are permanent or continuing in nature, and the Plaintiff will suffer the losses and impairments in the future. In addition, the Plaintiff lost the benefit of the Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, Plaintiff, DESIREE GOODE, demands Judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of earnings, loss of ability to earn money, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for all damages recoverable under the law against the Defendant and for any and all other relief which the Court deems just or appropriate.

<u>**COUNT VI**</u>
<u>**ASSUMPTION OF DUTY – NEGLIGENCE OF THE SHIP'S MEDICAL STAFF**</u>

178.   Plaintiff hereby adopts and realleges each and every allegation in paragraphs 1 through 115 as if set forth herein.

179.   The Defendant owed Plaintiff the duty to exercise reasonable care under the circumstances for the safety of its passengers.

180.   Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

181.   Defendant elected to discharge this duty by having Plaintiff seen by its own ship's doctors and/or other crew members.

182.   As such, Defendant voluntarily assumed a duty for the benefit of Plaintiff to use reasonable care in the provision of medical services to the Plaintiff.

183.   Defendant breached its duties, and was negligent by failing to adequately examine, diagnose, and/ or treat Plaintiff's injuries.

184.   Furthermore, Defendant breached its duties, and was negligent because the doctors and/or other crew members that were responsible for treating Plaintiff lacked adequate experience in treating injuries such as the one Plaintiff suffered.

185.   Defendant also breached its duties, and was negligent by failing to adequately supply its medical center to be able to adequately examine, diagnose, and treat Plaintiff's injuries.

186.   Moreover, Defendant breached its duties, and was negligent by failing to timely airlift, medivac, and/or disembark Plaintiff, and/or by otherwise failing to take proper measures to ensure that Plaintiff was able to obtain the medical treatment she needed in a reasonable amount of time.

187.   Additionally, at all times material hereto, Defendant was careless, negligent, and breached its duties through the following actions and/or inactions, in addition to the other actions and/or inactions described in the factual allegations common to all counts:

a.     Failing to promptly provide Plaintiff with proper and/or adequate medical care and attention; and/or

b.     Failing to timely diagnose and/or to render adequate care/assistance in relation to the diagnosis of Plaintiff's medical condition; and/or

c.     Knowingly rendering treatment to Plaintiff while lacking the proper licenses to practice medicine and/or nursing; and/or

d.    Failing to have proper licenses to practice medicine and/or nursing; and/or

e.    Failure to place the adequate number of sutures to Plaintiff's wound; and/or

f.    Failure to provide the proper instruction regarding removal of sutures.

188.    At all times material hereto, the aforementioned acts or omissions on the part of the Defendant fell below the standard of care.

189.    Defendant's negligence proximately caused Plaintiff great bodily harm in that, but for Defendant's negligence, Plaintiff's injuries would have been prevented or substantially lessened.

190.    Defendant, through its employees and agents, to wit, the ship's medical staff, knew, or should have known, that the medical procedures they employed violated reasonable standards of medical care.

191.    Defendant's negligence proximately caused Plaintiff great bodily harm in that, but for the Defendant's negligence, Plaintiff's injuries would not have occurred.

192.    As a direct and proximate result, Plaintiff was injured about Plaintiff's body and extremities, and/or her injuries were exacerbated, and Plaintiff suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions there from, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, and her working ability has been impaired. The injuries are permanent or continuing in nature, and the Plaintiff will suffer the losses and impairments in the future. In addition, the Plaintiff lost the benefit of the Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff, DESIREE GOODE, demands Judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization,

medical care and treatment, nursing care and treatment, loss of earnings, loss of ability to earn money, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for all damages recoverable under the law against the Defendant and for any and all other relief which the Court deems just or appropriate.

**COUNT VIII**
**NON-DELEGABLE DUTY TO PROVIDE REASONABLE MEDICAL CARE**

193.    Plaintiff hereby adopts and realleges each and every allegation in paragraphs 1 through 115 as if set forth herein.

194.    At all times material hereto, Defendant agreed and undertook, to provide a safe and secure vessel, and further provide reasonable medical care.

195.    At all times material hereto, Defendant had a duty to provide a safe and secure vessel, and further provide a reasonable degree of care and skill in attending to, examining, diagnosing, and treating the Plaintiff.

196.    Defendant breached its duties, and was negligent by failing to adequately examine, diagnose, and/ or treat Plaintiff's injuries.

197.    Furthermore, Defendant breached its duties, and was negligent because the doctors and/or other crew members that were responsible for treating Plaintiff lacked adequate experience in treating injuries such as the one Plaintiff suffered.

198.    Defendant also breached its duties, and was negligent by failing to adequately supply its medical center to be able to adequately examine, diagnose, and treat Plaintiff's injuries.

199.    Moreover, Defendant breached its duties, and was negligent by failing to timely airlift, medivac, and/or disembark Plaintiff, and/or by otherwise failing to take proper measures to ensure that Plaintiff was able to obtain the medical treatment she needed in a reasonable amount of time.

200.    Additionally, at all times material hereto, Defendant was careless, negligent, and

breached its duties through the following actions and/or inactions, in addition to the other actions

and/or inactions described in the factual allegations common to all counts:

a.  Failing to attend to the Plaintiff and her injuries after her incident;

b.  Failing to promptly provide Plaintiff with proper and/or adequate medical care and
    attention; and/or

c.  Failing to timely diagnose and/or to render adequate care/assistance in relation to the
    diagnosis of Plaintiff's medical condition; and/or

d.  Knowingly rendering treatment to Plaintiff while lacking the proper licenses to practice
    medicine and/or nursing; and/or

e.  Failing to have proper licenses to practice medicine and/or nursing; and/or

f.  Failure to place the adequate number of sutures to Plaintiff's wound; and/or

g.  Failure to provide the proper instruction regarding removal of sutures.

201.  At all times material hereto, the aforementioned acts or omissions on the part of
the Defendant fell below the standard of care.

202.  Defendant's negligence proximately caused Plaintiff great bodily harm in that, but
for Defendant's negligence, Plaintiff's injuries would not have occurred and/or said injuries
would have been substantially lessened.

203.  Defendant, through its employees and agents, to wit, the ship's medical staff,
knew, or should have known, that the medical procedures they employed violated reasonable
standards of medical care.

204.  Defendant's negligence proximately caused Plaintiff great bodily harm in that, but
for the Defendant's negligence, Plaintiff's injuries would not have occurred.

205.  As a direct and proximate result, Plaintiff was injured about Plaintiff's body and
extremities, and/or her injuries were exacerbated, and Plaintiff suffered physical pain, mental
anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously

existing conditions there from, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, and her working ability has been impaired. The injuries are permanent or continuing in nature, and the Plaintiff will suffer the losses and impairments in the future. In addition, the Plaintiff lost the benefit of the Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, Plaintiff, DESIREE GOODE, demands Judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of earnings, loss of ability to earn money, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for all damages recoverable under the law against the Defendant and for any and all other relief which the Court deems just or appropriate.

<u>COUNT IX</u>
<u>NEGLIGENCE AGAINST CARNIVAL AND MARGARITAVILLE DEFENDANTS</u>

206. Plaintiff hereby adopts and realleges each and every allegation in paragraphs 1 through 115 as if set forth herein.

207. At all times material, Defendants owed Plaintiff a duty of reasonable care under the circumstances.

208. On or about August 19, 2015, Defendants, and/or their agents, servants, joint venturers, and/or employees breached their duty to provide Plaintiff with reasonable care under the circumstances.

209. On or about August 19, 2015, Plaintiff was injured due to the fault and/or negligence of Defendants, and/or their agents, servants, joint venturers, and/or employees as follows:

a. Failure to maintain the plate and area in a reasonably safe condition; and/or

b. Failure to adequately and regularly inspect the plate and area for unreasonably hazardous conditions; and/or

c. Failure to adequately and regularly inspect the plate and area so that it does not become unreasonably hazardous to the Plaintiff; and/or

d. Failure to replace the plate and area prior to the Plaintiff's incident; and/or

e. Failure to warn the Plaintiff of the unreasonably dangerous condition of the plate and area; and/or

f. Failure to warn the Plaintiff of the risks and/or dangers associated with the unreasonably dangerous condition of the plate and area; and/or

g. Failure to warn the Plaintiff of other accidents and/or incidents previously involving its plates and areas; and/or

h. Failure to utilize an adequately safe plate and area; and/or

i. Failure to provide adequate training, instruction, and supervision of its staff members assigned to inspecting and/or maintaining the plate and area; and/or

j. Failure to promulgate and/or enforce and/or comply with rules and/or policies to ensure that the plate and area are inspected prior to persons such the Plaintiff interacting with them; and/or

k. Failure to promulgate and/or enforce and/or comply with rules and/or policies to ensure that unreasonably hazardous plates and areas are maintained and/or replaced prior to persons such as the plaintiff interacting with them; and/or

l. Failure to promulgate and/or enforce and/or comply with rules and/or policies to ensure its plates and areas do not become unreasonably hazardous; and/or

m. Failure to provide adequate lighting to enable people such as the Plaintiff to notice any hazards; and/or

n. Failure to adequately train its crew to keep its plates and areas clean and free of hazards; and/or

o. Failure to employ or adequately train crewmembers to properly inspect, clean and maintain the plate and area where Plaintiff's incident occurred; and/or

p. Failure to reasonably attend to the Plaintiff after her incident; and/or

q. Creating a risk-creating condition and/or failing to remedy a risk-creating condition which was known by the Defendant and which in the exercise of reasonable care should have been known by the Defendant; and/or

r. Failing to install proper and reasonable safeguards to prevent people such as the Plaintiff from being injured when swimming, traversing, and/or using the subject area; and/or

s. Through the negligent action and/or inaction of Defendants' employee mishandling the plate; and/or

t. Through the negligent action and/or inaction of Defendants' employee handing a flawed, defective, or otherwise dangerous plate to the Plaintiff; and/or

u. Failing to provide a safe plate and area as described above; and/or

v. Failing to properly vet its employees; and/or

w. Failing to properly select its employees; and/or

x. Through negligent hiring of its employees which defendants knew or should have known were dangerous and incompetent and liable to do harm; and/or

y. Failing to comply with applicable standards, statutes, or regulations the violation of which is negligence per se and/or evidence of negligence; and/or

z. Failing to otherwise maintain the plate and area in a safe and reasonable manner; and/or;

aa. Through other acts or omissions constituting a breach of the duty to use reasonable care which will be revealed through discovery.

210.   Defendants' negligence proximately caused Plaintiff great bodily harm in that, but for the Defendant's negligence, Plaintiff's injuries would not have occurred.

211.   Defendants either (a) had actual knowledge of the risk-creating conditions; (b) had constructive knowledge of the risk-creating conditions; (c) would have had knowledge of the risk-creating conditions had the Defendant implemented proper methods of inspection; and/or (d) created the risk-creating conditions such that Plaintiff is not required to prove notice of them or her burden of proof is otherwise lowered.

212.   At all material times, Defendants had exclusive custody and control of the plate and area

213.   The person who handed the plate to the Plaintiff was an employee of Defendants acting in the scope of his or her employment.

214.   These hazardous conditions existed for a period of time before the incident, and Defendant knew of the foregoing conditions causing the Plaintiff's incident and did not correct them, and/or the conditions existed for a sufficient length of time so that Defendant, in the

exercise of reasonable care under the circumstances, should have learned of them and corrected them, and/or the forgoing conditions occurred with enough frequency to impute constructive notice.

215. As a direct and proximate result of the negligence of Defendants, Plaintiff was injured about Plaintiff's body and extremities; suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, scarring, aggravation of previously existing conditions; incurred medical expenses in the care and treatment of Plaintiff's injuries both past and future; suffered physical handicap; lost wages and Plaintiff's working ability and earning capacity has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

216. The losses are either permanent or continuing in nature.

217. Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE,** Plaintiff demands Judgment against Defendants for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of earnings, loss of ability to earn money, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all damages recoverable under the law, and for any and all other relief which the Court deems just or appropriate.

## COUNT X
## APPARENT AGENCY OR AGENCY BY ESTOPPEL AGAINST CARNIVAL

218. Plaintiff hereby adopts and realleges each and every allegation in paragraphs 1 through 115 as if set forth herein.

219. At all times material hereto, MARGARITAVILLE DEFENDANTS, were the

apparent agents of CARNIVAL.

220. At all times material hereto, CARNIVAL is estopped from denying that MARGARITAVILLE DEFENDANTS, were its agents or employees.

221. At all times material hereto, CARNIVAL made manifestations which caused Plaintiff to believe that MARGARITAVILLE DEFENDANTS, had authority to act for the benefit of CARNIVAL. These manifestations included:

a. CARNIVAL allowed its name to be utilized in connection with the advertising of MARGARITAVILLE DEFENDANTS' shore excursion; and/or

b. CARNIVAL made all arrangements for the subject shore excursion without effectively disclosing to Plaintiff that the subject shore excursion was being run by another entity (and/or entities); and/or

c. CARNIVAL marketed the subject shore excursion using its company logo on its website and/or in its brochures and/or on its ship without effectively disclosing to Plaintiff that the subject shore excursion was being run by another entity (and/or entities); and/or

d. CARNIVAL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject shore excursion without effectively disclosing to Plaintiff that the subject shore excursion was being run by another entity (and/or entities); and/or

e. Until the point that Plaintiff actually participated in the subject shore excursion, Plaintiff's exclusive contact concerning the subject shore excursion was with CARNIVAL; and/or

f. CARNIVAL recommended to Plaintiff to not engage in shore excursions, tours, or activities that are not sold through CARNIVAL as CARNIVAL has no familiarity with other tours or their operations; and/or

g. The fee for the excursion was charged to Plaintiff, and collected from the Plaintiff, exclusively by CARNIVAL, and/or

h. Plaintiff received a receipt exclusively from CARNIVAL for the purchase of the subject shore excursion.

222. At all times material hereto, under the circumstances described above, it was reasonable for Plaintiff to believe that MARGARITAVILLE DEFENDANTS had authority to act for the benefit of CARNIVAL.

223. At all times material hereto, Plaintiff relied on the above, to his detriment, so as to believe that MARGARITAVILLE DEFENDANTS, were the agents and/or employees of

CARNIVAL, in choosing the subject shore excursion. Additionally, CARNIVAL's actions caused Plaintiff to believe that MARGARITAVILLE DEFENDANTS, had authority to act on CARNIVAL's behalf.

224. The foregoing acts of negligence of CARNIVAL and/or MARGARITAVILLE DEFENDANTS were a direct and proximate cause of the Plaintiff's injuries and damages.

225. As a direct and proximate result of the negligence of Defendants, Plaintiff was injured about Plaintiff's body and extremities; suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, scarring, aggravation of previously existing conditions; incurred medical expenses in the care and treatment of Plaintiff's injuries both past and future; suffered physical handicap; lost wages and Plaintiff's working ability and earning capacity has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, Plaintiff demands Judgment against Defendants for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of earnings, loss of ability to earn money, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all damages recoverable under the law, and for any and all other relief which the Court deems just or appropriate.

## COUNT XI
## JOINT VENTURE BETWEEN CARNIVAL AND MARGARITAVILLE DEFENDANTS

226. Plaintiff hereby adopts and realleges each and every allegation in paragraphs 1 through 115 as if set forth herein.

227. At all times material hereto, CARNIVAL and MARGARITAVILLE DEFENDANTS, engaged in a joint venture to provide shore excursions to passengers aboard

CARNIVAL's ship(s).

228. At all times material hereto, CARNIVAL and MARGARITAVILLE DEFENDANTS entered into an agreement whereby CARNIVAL would advertise, market, and sell the subject shore excursion to its passengers, including Plaintiff, and MARGARITAVILLE DEFENDANTS, would operate the subject shore excursion.

229. As its part of the joint venture, CARNIVAL arranged for, advertised, marketed, recommended, operated, sold, and/or collected money for the subject shore excursion and the money was then shared between CARNIVAL and MARGARITAVILLE DEFENDANTS.

230. As its part of the joint venture, MARGARITAVILLE DEFENDANTS, provided labor and/or operated the subject shore excursion.

231. CARNIVAL, on behalf of the joint venture, determined the fee and charged the fee to passengers, including Plaintiff, who participated in the subject shore excursion. The earnings were split between CARNIVAL and MARGARITAVILLE DEFENDANTS.

232. At all times material hereto, CARNIVAL and MARGARITAVILLE DEFENDANTS, had joint and/or shared control over aspects of the joint venture. MARGARITAVILLE DEFENDANTS had control over the day-to-day workings of the subject shore excursion. CARNIVAL also had control over the day-to-day workings of the excursions in that it required MARGARITAVILLE DEFENDANTS, to exercise reasonable care in the operation of the subject shore excursion. CARNIVAL had control over the arrangements, advertising, marketing, and sales of the subject shore excursion.

233. At all times material hereto, CARNIVAL and MARGARITAVILLE DEFENDANTS, shared a common purpose: to operate the subject shore excursion for a profit.

234. At all times material hereto, CARNIVAL and MARGARITAVILLE DEFENDANTS, had a joint proprietary and/or ownership interest in the subject shore excursion. CARNIVAL had an interest in arranging, sponsoring, recommending, advertising, operating, and

selling the subject shore excursion as well as collecting money for such excursion, and MARGARITAVILLE DEFENDANTS had a proprietary interest in the time and labor expended in operating the subject shore excursion.

235. At all times material hereto, CARNIVAL and MARGARITAVILLE DEFENDANTS, shared all losses sustained from the joint venture.

236. CARNIVAL and MARGARITAVILLE DEFENDANTS are jointly and severally liable for the negligence of the other as partners of the partnership and/or joint venture.

237. At all times material hereto, CARNIVAL and MARGARITAVILLE DEFENDANTS therefore:

    a. Had an intention to create a joint venture; and/or

    b. Had a joint proprietary interest in the subject matter of the venture; and/or

    c. Had mutual control and/or joint control over the subject matter of the venture with respect to the provision of excursions to passengers aboard the ship; and/or

    d. Had a right to share in the profits of the joint venture; and/or

    e. Would share losses which may have been sustained.

238. As joint venturers, CARNIVAL and MARGARITAVILLE DEFENDANTS are liable for each other's negligence. As a result, CARNIVAL is liable for the negligent conduct of MARGARITAVILLE DEFENDANTS.

239. As a direct and proximate result of the negligence of Defendants, Plaintiff was injured about Plaintiff's body and extremities; suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, scarring, aggravation of previously existing conditions; incurred medical expenses in the care and treatment of Plaintiff's injuries both past and future; suffered physical handicap; lost wages and Plaintiff's working ability and earning capacity has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will

suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, Plaintiff demands Judgment against Defendants for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of earnings, loss of ability to earn money, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all damages recoverable under the law, and for any and all other relief which the Court deems just or appropriate.

## COUNT XII
## THIRD PARTY BENEFICIARY

240. Plaintiff hereby adopts and realleges each and every allegation in paragraphs 1 through 115 as if set forth herein.

241. At all times material hereto, CARNIVAL advertised to passengers, including Plaintiff, that one of the reasons that its passengers, including Plaintiff, should book shore excursions through CARNIVAL is because CARNIVAL contracts with professional and insured shore excursion operators.

242. CARNIVAL and MARGARITAVILLE DEFENDANTS, entered into a contract to provide shore excursions for passengers on board CARNIVAL's ship(s).

243. The contract between the parties clearly manifested the intent of the contracting parties that the contract primarily and directly benefits CARNIVAL's passengers, including Plaintiff, as third parties by requiring MARGARITAVILLE DEFENDANTS, to maintain insurance and/or exercise reasonable care in the operation of the subject shore excursion.

244. This contract was breached by MARGARITAVILLE DEFENDANTS, and CARNIVAL as a consequence of acts and/or omissions that include, but are not limited to, the following:

a. Failure to maintain the plate and area in a reasonably safe condition; and/or

b. Failure to adequately and regularly inspect the plate and area for unreasonably hazardous conditions; and/or

c. Failure to adequately and regularly inspect the plate and area so that it does not become unreasonably hazardous to the Plaintiff; and/or

d. Failure to replace the plate and area prior to the Plaintiff's incident; and/or

e. Failure to warn the Plaintiff of the unreasonably dangerous condition of the plate and area; and/or

f. Failure to warn the Plaintiff of the risks and/or dangers associated with the unreasonably dangerous condition of the plate and area; and/or

g. Failure to warn the Plaintiff of other accidents and/or incidents previously involving its plates and areas; and/or

h. Failure to utilize an adequately safe plate and area; and/or

i. Failure to provide adequate training, instruction, and supervision of its staff members assigned to inspecting and/or maintaining the plate and area; and/or

j. Failure to promulgate and/or enforce and/or comply with rules and/or policies to ensure that the plate and area are inspected prior to persons such the Plaintiff interacting with them; and/or

k. Failure to promulgate and/or enforce and/or comply with rules and/or policies to ensure that unreasonably hazardous plates and areas are maintained and/or replaced prior to persons such as the plaintiff interacting with them; and/or

l. Failure to promulgate and/or enforce and/or comply with rules and/or policies to ensure its plates and areas do not become unreasonably hazardous; and/or

m. Failure to provide adequate lighting to enable people such as the Plaintiff to notice any hazards; and/or

n. Failure to adequately train its crew to keep its plates and areas clean and free of hazards; and/or

o. Failure to employ or adequately train crewmembers to properly inspect, clean and maintain the plate and area where Plaintiff's incident occurred; and/or

p. Failure to reasonably attend to the Plaintiff after her incident; and/or

q. Creating a risk-creating condition and/or failing to remedy a risk-creating condition which was known by the Defendant and which in the exercise of reasonable care should have been known by the Defendant; and/or

r. Failing to install proper and reasonable safeguards to prevent people such as the Plaintiff from being injured when swimming, traversing, and/or using the subject area; and/or

s. Through the negligent action and/or inaction Defendants' employee mishandling the plate.

t. Through the negligent action and/or inaction Defendants' employee handing a flawed, defective, or otherwise dangerous plate to the Plaintiff.

u. Failing to comply with applicable standards, statutes, or regulations the violation of which is negligence per se and/or evidence of negligence; and/or

v. Failing to otherwise maintain the plate and area in a safe and reasonable manner; and/or;

w. Through other acts or omissions constituting a breach of the duty to use reasonable care which will be revealed through discovery.

245. As a direct and proximate result of the negligence of Defendants, Plaintiff was injured about Plaintiff's body and extremities; suffered physical pain, scarring, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of previously existing conditions; incurred medical expenses in the care and treatment of Plaintiff's injuries both past and future; suffered physical handicap; lost wages and Plaintiff's working ability and earning capacity has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, Plaintiff demands Judgment against Defendants for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of earnings, loss of ability to earn money, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all damages recoverable under the law, and for any and all other relief which the Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, DESIREE GOODE, demands trial by jury on all issues so triable.

**Dated:** this  15th  day of  January       , 2018  .

ARONFELD TRIAL LAWYERS
Attorneys for Plaintiff
3132 Ponce de Leon Boulevard
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198

By:      */s/Spencer Aronfeld, Esq.*
Spencer Aronfeld, Esq.
Florida Bar No.: 905161
Aronfeld@Aronfeld.com




By:      */s/Matthias Hayashi, Esq.*
Matthias Hayashi, Esq.
Fla. Bar. No.: 115973
mhayashi@aronfeld.com
